ASHLEY HUDSON MURRAY     *     NO. 2024-CA-0264

VERSUS     *

THADDEUS MURRAY, SR.     *

    *

    COURT OF APPEAL

    FOURTH CIRCUIT

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-00448, DIVISION "H"
HONORABLE Monique E. Barial
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase, Judge Karen K. Herman)

Kim N. Nguyen
Gordon J. Kuehl
Natalie N. Baudouin
HOFFMAN NGUYEN & KUEHL
643 Magazine Street, Suite 401
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLEE

Edward A. Ready
READY LAW, LLC
2901 Ridgelake Drive, Suite 205
Metairie, LA 70002

      COUNSEL FOR DEFENDANT/APPELLANT

        **AFFIRMED**
        **AUGUST 5, 2024**

Appellant, Thaddeus Murray, Sr. (hereinafter "Mr. Murray"), seeks review of the trial court's February 21, 2024 judgment which designated Ashley Hudson Murray (hereinafter "Ms. Hudson") as domiciliary parent and granted her petition for relocation. After consideration of the record before this Court and the applicable law, we affirm the trial court's judgment.

## Facts and Procedural History

Mr. Murray and Ms. Hudson were married in August 2019 and established their matrimonial domicile in New Orleans, Louisiana. The marriage produced one child born on March 30, 2020. In December 2020, Ms. Hudson traveled to Ruston, Louisiana with the child to visit her family. Rather than return to New Orleans, Ms. Hudson and the child remained in Ruston.[1]

On January 15, 2021, Ms. Hudson filed (1) a petition for divorce and (2) a petition for protection from abuse (hereinafter "protective order") in Orleans Parish on behalf of herself and the child.[2] In her petition for divorce, Ms. Hudson

---

[1] Ms. Hudson did not provide Mr. Murray with notice of her intent to relocate the child's principle residence prior to traveling to Ruston.

[2] The parties' divorce was finalized by judgment dated June 13, 2022.

1

requested the appointment of a custody evaluator, child support, spousal support and a temporary restraining order.

On January 25, 2021, Ms. Hudson mailed Mr. Murray a letter notifying him of her intent to relocate to Ruston. Shortly thereafter, Ms. Hudson filed a petition for relocation seeking court authorization to relocate.[3] In his answer to the petition for divorce, Mr. Murray formally objected to the relocation, requested appointment of a custody evaluator and sought to be designated as domiciliary parent.

On March 3, 2021, the trial court conducted a hearing on the protective order in accordance with La. R.S. 42:2131 *et seq*. However, prior to conclusion of the hearing, the trial court was notified of the filing of the petition for relocation and noted that a final custody order could not be implemented until after the request for relocation was considered. The trial court issued a judgment on the protective order rejecting Ms. Hudson's claim on her allegations of abuse; appointing Dr. Kristen Luscher to perform a custody evaluation; and entering an interim joint custody order whereby the parties exercised a "seven days on, seven days off" visitation schedule.[4]

A three-day trial was held on custody and relocation. The trial court issued a judgment on February 21, 2024, awarding the parties joint custody of the child, designating Ms. Hudson as domiciliary parent and granting her petition for relocation. This appeal followed.[5]

---

[3] The petition did not initially appear in the trial court record.

[4] During the hearing, an oral motion for involuntary dismissal of the protective order regarding the child was granted. This is reflected in the May 10, 2021 judgment.

[5] On appeal, Mr. Murray does not challenge the portion of the trial court's judgment granting joint custody to the parties.

**Standard of Review**

Designation of a domiciliary parent is part of a child custody determination and is reviewed under an abuse of discretion standard. *Bergmann v. Nguyen*, 2021-0553, p. 14 (La.App. 4 Cir. 4/27/22), 366 So.3d 422, 432, *writ denied*, 2022-01075 (La. 10/18/22), 348 So.3d 725 (citation omitted). The ruling will not be disturbed absent a clear showing of abuse of discretion. *Id*. Likewise, this Court reviews a trial court's determination in relocation cases under an abuse of discretion standard. *Coulon v. Coulon*, 2022-0619, p. 7 (La.App. 4 Cir. 11/9/22), 351 So.3d 823, 828.

**Discussion**

On appeal, Mr. Murray raises two assignments of error: (1) the trial court erred in granting Ms. Hudson's petition for custody and designating her as the domiciliary parent; and (2) the trial court committed legal error in its interpretation and application of the relocation statute by granting Ms. Hudson's petition for relocation. We will address each in turn.

**Domiciliary Designation**

Mr. Murray does not contest the trial court's award of joint custody to the parties. Rather, he submits the trial court erred in designating Ms. Hudson as the domiciliary parent.

"The best interest of the child is the sole criterion to be met in making a custody award." *Hodges v. Hodges*, 2015-0585, p. 2 (La. 11/23/15), 181 So.3d 700, 702 (citations omitted). Child custody determinations, including designation of a domiciliary parent, are governed by the standard of what is in the best interest of the child. *Bergmann*, 2021-0553, p. 25, 366 So.3d at 438. "The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent

3

shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents." La. R.S. 9:335(B)(2). Each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount consideration being the best interest of the child. La. C.C. art. 131.

La. C.C. art. 134 sets forth fourteen non-exclusive factors for a court to consider in determining the best interest of the child. *Council v. Livingston*, 2019-1049, pp. 9-10 (La.App. 4 Cir. 3/13/20), 364 So.3d 410, 418 ("[T]he Legislature expressly stated that the factors were intended to be non-exclusive, providing that '[t]he court shall consider all relevant factors in determining the best interest of the child.'") (citation omitted) (emphasis omitted). Mr. Murray acknowledges the trial court's consideration of the fourteen factors enumerated in La. C.C. art. 134; however, he argues that the trial court failed to give greater weight to the fact that Ms. Hudson removed the child from the jurisdiction of the court without notice or his consent.[6]

Several witnesses testified at the custody/relocation trial, including the parties. Dr. Kristen Luscher, who performed the custody evaluation, testified that Ms. Hudson should be designated as the domiciliary parent and be allowed to

---

[6] The factors include: (1) the potential for the child to be abused, which shall be of primary consideration; (2) the love, affection and other emotional ties between each party and the child; (3) the capacity and disposition of each party to give the child love, affection and spiritual guidance and to continue the education and rearing of the child; (4) the capacity and disposition of each party to provide the child with food, clothing, medical care and other material needs; (5) the length of time the child has lived in a stable, adequate environment and the desirability of maintaining continuity of that environment; (6) the permanence of the existing or proposed custodial home; (7) the moral fitness of each party with regards to the welfare of the child; (8) the history of substance abuse, violence or criminal activity of any party; (9) the mental and physical health of each party; (10) the home, school and community history of the child; (11) the reasonable preference of the child, if the child is of sufficient age; (12) the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party; (13) the distance between the respective residences of the parties; and (14) the responsibility for the care and rearing of the child previously exercised by each party. La. C.C. art. 134(A).

4

relocate to Ruston. Dr. Luscher's testimony reveals the myriad of issues facing the trial court regarding the credibility of the parties. Dr. Luscher initially recommended joint custody with Ms. Hudson designated as the domiciliary parent. However, after being made aware of Ms. Hudson's petition to relocate to Ruston with the child, and based upon information provided by Mr. Murray, Dr. Luscher issued an addendum to her original custody evaluation. Dr. Luscher recommended Ms. Hudson's request for relocation be denied and recommended designating Mr. Murray as the domiciliary parent. At trial, Dr. Luscher reverted to her original recommendation that Ms. Hudson be designated as the domiciliary parent and her request for relocation granted.[7]

In most child custody cases, the trial court's determination is based heavily on factual findings. When presented with two permissible views of the evidence, the trial court's choice between them cannot be manifestly erroneous or clearly wrong. *Laurent v. Prevost*, 2018-0126, p. 4 (La.App. 4 Cir. 7/11/18), 251 So.3d 504, 507 (quotation omitted) (citation omitted). A trial court has the freedom to consider additional factors, as well as the totality of the circumstances and facts of each individual case when determining what is in the best interest of the child. *Hodges*, 2015-0585, p. 4, 181 So.3d at 703 (citation omitted).

The trial court correctly determined that it should address custody before considering the issue of relocation. Mr. Murray focuses on Ms. Hudson's initial removal of the child from the marital home as the reason the trial court abused its

---

[7] Neither party requested sequestration of the witnesses and Dr. Luscher remained in the courtroom throughout the proceedings. After hearing testimony from various witnesses. Dr. Luscher testified that she considered unreliable information provided by Mr. Murray when preparing her addendum to the evaluation. She stated that Mr. Murray was not completely forthcoming in providing certain information and based on the testimony at trial, Ms. Hudson should be designated domiciliary parent and her request for relocation granted.

discretion in designating Ms. Hudson as the domiciliary parent. In making a credibility determination, the trial court considered the totality of the facts and found that designating Ms. Hudson as domiciliary parent was in the best interest of the child. Ms. Hudson's testimony indicates she is best suited to fulfill the role as domiciliary parent. She has been the primary caretaker of the child. Additionally, she has a flexible work schedule, which allows her to spend more time with the child. We find the trial court did consider the totality of the circumstances in determining designation of the domiciliary parent. Therefore, the trial court did not abuse its discretion in designating Ms. Hudson as the domiciliary parent.

### Relocation

Mr. Murray next argues that the trial court committed legal error in its interpretation and application of the relocation statute by granting Ms. Hudson's petition for relocation. Specifically, he claims the trial court should not have granted the petition for relocation when the facts were clear that Ms. Hudson was not in good faith and that relocation to Ruston is not in the best interest of the child.

La. R.S. 9:355.10 requires Ms. Hudson to establish that: (1) relocation is made in good faith and (2) is in the best interest of the child. La. R.S. 9:355.10. "[J]urispurdence has defined the meaning of the term good faith…as a legitimate or valid reason for the move." *McLain v. McLain*, 2007-0752, pp. 13-14 (La.App. 4 Cir. 12/12/07), 974 So.2d 726, 734. Valid reasons for relocation include:

> to be close to significant family or other support networks; for significant health reasons; to protect the safety of the child or another member of the child's household from a significant risk of harm; to pursue a significant employment or educational opportunity; or to be with one's spouse (or equivalent) who is established, or is pursuing a significant employment or educational opportunity in another location.

6

*State ex rel. Dep't of Soc. Servs. v. Whittington*, 2015-1118, p. 6 (La.App. 4 Cir. 5/18/16), 193 So.3d 1234, 1239.

The child is very young and has a loving relationship and supportive bond with both parents. The trial court also recognized the lack of candor and untruthfulness exhibited by both parties during the custody proceedings. Particularly referencing Mr. Murray's failure to be forthcoming about his new significant other who, unbeknownst to Ms. Hudson or Dr. Luscher, has spent time with the child. The trial court also observed that Ms. Hudson was not completely truthful when filing the petition for divorce and protective order. As noted by the trial court, Ms. Hudson sought relocation because she did not have a job or family in New Orleans; her family lives in Ruston and are willing to provide child care as needed; and she is able to live rent free. At trial, the trial court acknowledged and admonished Ms. Hudson regarding the close proximity of the filing of her petition for divorce and protective order. Thus, we disagree with Mr. Murray's contention that the trial court failed to consider Ms. Hudson's actions.

Ms. Hudson is originally from Ruston and moved to New Orleans after marrying Mr. Murray. Although they established their matrimonial domicile in New Orleans, their marriage terminated in 2022. Ms. Hudson did not have a job or any close family in the New Orleans area. At trial, Ms. Hudson testified that she had obtained a job in Ruston and that her parents offered to allow her and the child to live in a home without the necessity of paying rent. Her parents also testified

that they would assist their daughter and grandchild both emotionally and financially. [8]

"In reviewing the record to determine whether the trial court's ultimate conclusion constitutes an abuse of discretion, an appellate court must accept each factual finding the trial court made in arriving at that conclusion, unless the particular factual finding is manifestly erroneous." *LaGraize v. Filson*, 2014-1353, p. 15 (La.App. 4 Cir. 6/3/15), 171 So.3d 1047, 1054. We have thoroughly reviewed the record in considering Mr. Murray's contentions. As noted above, the determination of whether Ms. Hudson was in good faith is a factual determination, and cannot be disturbed absent a finding that the trial court abused its discretion. Based on the record before this Court, accepting each factual finding made by the trial court, we do not find the trial court abused its discretion is determining that Ms. Hudson's relocation was made in good faith. We next analyze whether relocation is in the best interest of the child.

La. R.S. 9:355.14(A) sets forth the following factors to determine whether a contested relocation is in the best interest of the child:

> (1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.
>
> (3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or

---

[8] Ms. Hudson presented other family and friends as witnesses to bolster her request for relocation. These witnesses stated that they would also assist Ms. Hudson with child care as needed. The trial court found the testimony of the witnesses established that Ms. Hudson would have significant family and a support system in Ruston and therefore found Ms. Hudson's relocation was made in good faith.

visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

La. R.S. 9:355.14 provides that the trial court is required to consider all relevant factors when determining relocation, including those listed in the statute. *Narcisse-Thomas v. Thomas*, 2023-0463, p. 24 (La.App. 4 Cir. 5/3/24), ___ So.3d ___, 2024 WL 1954335, *11. However, "the trial court is not required to expressly analyze each factor in its oral or written reasons for judgment in a relocation case." *Gathen v. Gathen*, 2010-2312, p. 12 (La. 5/10/11), 66 So.3d 1, 9. The trial court's findings regarding the relocation factors enumerated in La. R.S. 9:355.14 are "entitled to great weight and will not be overturned absent a clear showing of abuse of

9

discretion." *Id.*, 2010-2312, p. 13, 66 So.3d at 9 (citation omitted). Mr. Murray challenges the relocation, contending that it is not in the best interest of the child.

The first factor in La. R.S. 9:355.14 is "[t]he nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life." The child was only 10 months old when Ms. Hudson sought to relocate to Ruston. The trial acknowledged that the child has a stable and loving relationship with both parents. The trial court found that both parties demonstrated that the quality and extent of their involvement with the child is significant. However, in Ruston, the child has been afforded the opportunity to spend quality time with the maternal grandparents, as well as other maternal family and friends. The trial court also considered that Ms. Hudson's remote work schedule affords her the ability to spend time with the child. While the child has additional paternal siblings, the siblings do not live in New Orleans. As such, Mr. Murray's ability to foster a bond between the child and the siblings is not affected by relocation.

The second factor is "[t]he age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical educational, and emotional development." The trial court noted that the child is at an age where there exists the need to establish a primary residence. The record does not contain any evidence that the child has been adversely effected by relocation. The child has attended daycare and spent time with family in Ruston without issue.

The third factor is "[t]he feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of

the parties." The trial court found that although Ruston is not close in proximity to New Orleans, the possibility of preserving a good relationship with both parents is feasible. The child has a strong bond with both parents, suggesting that the relationship could be maintained by weekend and holiday visits. The trial court also recognized the availability of video technology which could be used regularly.

The fourth factor is "[t]he child's views about the proposed relocation, taking into consideration the age and maturity of the child." The child in this matter is under the age of five and therefore, this factor was not considered by the trial court.

The fifth factor is "[w]hether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party." The trial court noted that neither party has currently exhibited behavior demonstrating an attempt to thwart the other party's relationship with the child.

The sixth factor is "[h]ow the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity." The trial court considered the lower cost of living in Ruston and the financial benefit afforded Ms. Hudson because she is not required to pay rent. Additionally, the child would have access to a better public school in Ruston. Testimony at trial indicated that if the child were to reside in New Orleans, attendance at a private school would be likely and create a greater financial burden on both parties.

The seventh factor is "[t]he reasons of each person seeking or opposing the relocation." Ms. Hudson seeks relocation in order to obtain greater financial and family support. Mr. Murray opposes relocation because the distance would

adversely impact the frequency of physical visits with the child. He also raises issue with Ms. Hudson's residence being located on a busy street and the lack of fencing around the residence. The trial court addressed Mr. Murray's safety concerns and suggested that the child play in the backyard or erect fencing around the residence.

The eighth factor is "[t]he current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child." As noted by the trial court, both parties are currently employed. Mr. Murray has been employed by the New Orleans Police Department for a significant number of years and was the primary financial provider for his family. Currently, Ms. Hudson is employed with St. Francis Medical Center and has been since March 2023. She testified that she recently received a promotion and earns a satisfactory salary in Ruston.

The ninth factor is "[t]he extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations." Although requested in the initial petition for divorce, the trial court noted no child support order was currently implemented. As such, direct financial assistance was not provided by Mr. Murray; however, he does maintain insurance for the child.

The tenth factor is "[t]he feasibility of a relocation by the objecting person." The trial court found that it would not be feasible for Mr. Murray to relocate. He maintains a tenured position as a sergeant with the New Orleans Police Department and in the process of vesting in the retirement system. Relocation would adversely impact his current employment status.

The eleventh factor is "[a]ny history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation." The trial court recognized the contention between the parties wherein both alleged threats or physical contact by the other. However, none of the claims were substantiated. The trial court noted that both parties had acted "inappropriately" in this matter but not to such a degree that would have a negative impact under this factor. Although Ms. Hudson initially filed a protective order, the trial court determined the allegations lacked merit.[9]

The twelfth and final factor is "[a]ny other factors affecting the best interest of the child." The trial court noted Mr. Murray's lack of transparency regarding his current relationship status and the swiftness in which the new relationship progressed. Mr. Murray testified that he did not reveal his engagement because of Ms. Hudson's potential reaction. The trial court observed that while Dr. Luscher shared significant concern about Mr. Murray's failure to disclose an individual who would spend a significant amount of time with the child, the trial court did not find the non-disclosure significantly pertinent.

Based on our review of the record, we find the trial court did not abuse its discretion in granting Ms. Hudson's petition for relocation. Ms. Hudson has significant family and a support system in Ruston. She does not have any support system in New Orleans. While relocation will impact the frequency of Mr. Murray's visits with the child, we agree with the trial court that current technology allows for regular contact together with the ability to exercise physical custody

_____

[9] We note that the trial court judge who heard the petition for protection from abuse is the same trial court judge who rendered judgment regarding relocation.

during weekends, summers and holidays. The trial court considered the impact of the relocation on Mr. Murray but determined that the best interest of the child favored relocation. Based upon our review of the record, we do not find the trial court abused its discretion in granting Ms. Hudson's request for relocation.

**Notice**

Mr. Murray also maintains that because Ms. Hudson failed to provide notice of relocation, pursuant to La. R.S. 9:355.5, granting relocation was improper. La. R.S. 9:355.5(A) provides:

> A. Notice of a proposed relocation of the principal residence of a child shall be given by registered or certified mail, return receipt requested, or delivered by commercial courier as defined in [La.] R.S. 13:3204(D), to the last known address of the person entitled to notice under [La.] R.S. 9:355.4 no later than any of the following:
>
> (1) The sixtieth day before the date of the proposed relocation.
>
> (2) The tenth day after the date that the person proposing relocation knows the information required to be furnished by Subsection B of this Section, if the person did not know and could not reasonably have known the information in sufficient time to provide the sixty-day notice, and it is not reasonably possible to extend the time for relocation of the child.

La. R.S. 9:355.5(A)(1-2). It is undisputed that Ms. Hudson did not provide Mr. Murray with notice of relocation prior to relocating to Ruston. However, a trial court has vast discretion to determine the impact of a failure to provide notice of relocation. La. R.S. 9:355.6 provides that the trial court may consider the failure to provide notice of relocation as:

> (1) A factor in making its determination regarding the relocation of a child.
>
> (2) A basis for ordering the return of the child if the relocation has taken place without notice or court authorization.

14

(3) Sufficient cause to order the person proposing relocation to pay reasonable expenses incurred by the person objecting to the relocation.

La. R.S. 9:355.6(1-3). Thus, the trial court has discretion as to how to assess a party's failure to provide notice prior to relocation.

The record reveals the trial court noted Ms. Hudson's failure to provide notice of relocation prior to actually relocating to Ruston, and therefore took it into consideration when evaluating whether to grant relocation. A party's failure to provide notice is a factor which the trial court may consider when determining whether to grant relocation. La. R.S. 9:355.6(1). Given the trial court's vast discretion in relocation cases, we find the trial court considered the totality of the circumstances and found Ms. Hudson's failure to provide notice of relocation was not outweighed by the other factors favoring relocation.

## Decree

For the foregoing reasons, the February 21, 2024 judgment of the trial court is affirmed.

**AFFIRMED**

15